UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Crim. No. 2015-CR-10338 |
| ) | |
| RUTILIO PORTILLO, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

**I.     INTRODUCTION**

As a young, impressionable man, Rutilio Portillo was recruited into a lifestyle that provides little avenue for escape. As a teenager, he was brought to the United States by his father; a few months later, his father returned home and he was left to fend for himself. He gravitated towards others from his home country. When he witnessed his cousin's killing, he fell into a deep depression. He longed for support and found it in MS-13. After he was deported in 2008, he wanted to leave this life behind him. But leaving MS-13 is not always possible; indeed, being a part of MS-13 is often less dangerous than being against them.

Portillo later returned to the United States to seek work. His main goal was to support his family, both here and in El Salvador. And he did just that. His continued involvement with MS-13 was minimal. He was considered an "old-timer." He did not plan or carry out acts of violence. He sold small amounts of marijuana and helped send

some of that money to El Salvador.

He has plead guilty for his role. He will undoubtedly be deported again to El Salvador. He has already spent 24 months incarcerated. At this point, a sentence of 27 months is sufficient to accomplish all the goals of sentencing.

## II.     APPLICATION OF 18 U.S.C. § 3553

Consistent with the federal courts' long-standing, deep concern for individualized sentencing, the United States Supreme Court has repeatedly affirmed individualized assessments accomplished by considering applicable 18 U.S.C. § 3553(a) factors in fashioning an appropriate sentence. *See e.g. United States v. Booker*, 543 U.S. 220, 259-260 (2005); *Rita v. United States,* 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Pepper v. United States*, 562 U.S. 476 (2011).[1] Moreover, the U.S. Supreme Court has highlighted Congress's directive that: "[n]o limitation . . . be placed on the information concerning the background, character, and conduct of a defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence." *Pepper*, *supra*, at 490-91, *citing* 18 U.S.C. § 3661.

With respect to application of the Guidelines, the district court <u>cannot</u> presume that the Guidelines range applies to any particular case. *Rita v. United States*, 551 U.S. 338 (2007).  Rather, the Guidelines are simply a starting point from which the district court then has the discretion to "conduct an inquiry broad in scope, largely unlimited

---

[1]     The sentencing court is not required to consider individually each of the Section 3553(a) factors before issuing a sentence.  Rather, a district court need only consider the factors *en masse* and state its reasons for imposing a given sentence.

2

either as to the kind of information [they] may consider, or the source from which it may come. *Pepper*, *supra* at 489-90.

Sentencing under Section 3553(a) therefore requires the Court to start with the minimum sentence permissible and add only so much additional punishment, if any, as is necessary to comply with Section 3553(a)'s purposes. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (Section 3553(a) "as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing . . . .")

There are several factors here that, when taken together, warrant a sentence of 27 months. As highlighted below, Portillo's role was limited; his participation was an unfortunate necessity to accomplish his bigger goal of being in the U.S. to work and support his family; since his incarceration, he has taken steps to better himself; and, finally, he was severely assaulted while in custody and is still suffering medically.

### III.   RELEVANT SENTENCING FACTORS

#### A.   HISTORY & CHARACTERISTICS

The PSR accurately describes Portillo's background. Portillo was brought to this country as a young teenager, and then left to fend for himself. It was a common pattern in his family and within his country. He had lawful status for many years; unfortunately, it expired and he did not renew it. He was thus deported. He returned largely to continue working and supporting his family, both here and El Salvador. And

he did just that.[2]

Portillo continues to have the support of his family, both here and in El Salvador. His family is aware of his circumstances and looks forward to seeing him again. *See* Exhibit 1 (Letters of support).[3] While incarcerated, he has attempted to better himself. He has taken classes, including educational (*e.g.* English and math) and lifestyle (*e.g.* restorative justice and anger management). He acts as a translator for other inmates when possible. He was even instrumental in helping stop the recent hunger strike. *See* Exhibit 2 (Documents from Wyatt).

He was also the innocent victim of a very severe assault. Targeted for his status and involvement with MS-13, and not for any other discernable reason, he was jumped by a group of men. He broke his nose, required stiches on his lip, his face was severely bruised, and his eyesight was temporarily impacted. To this day, he continues to suffer medically and is now told he should have a surgical procedure to open his airways. Unfortunately, because this was not recommended right away, it appears unlikely he will receive this procedure prior to his release.

    **B.  NATURE & CIRCUMSTANCES OF THE OFFENSE**

Portillo has taken responsibility for his part in this RICO conspiracy and role

---

[2] For example, in the recorded conversations in this case, one includes Portillo speaking with his family indicating when he would be sending them more money.

[3] Counsel recognizes that the letters are all in Spanish. Some are from family here; many are from his family in El Salvador. Counsel submits these to at least demonstrate to the Court that his family support is sincere and he will have reason to stay in El Salvador when he returns.

4

selling marijuana. He was not, however, responsible for the numerous violent acts others did. In all the time the government recorded and monitored the numerous defendants, Portillo was never present at any of the meetings or on any phone calls. The lone recordings of him involve conversations with an informant looking to buy marijuana; Portillo complied, and helped arrange that sale. Portillo then spoke of the minimal ways in which he still participated with MS-13. He would talk to young recruits,[4] he would help organize sending money back to El Salvador, and he contributed some of the small profits from selling small amounts of marijuana. That was it.

C. **NEED FOR THE SENTENCE IMPOSED**

One federal judge has framed the purposes of sentencing as follows:

> We have long understood that sentencing serves the purposes of retribution, deterrence, incapacitation, and rehabilitation. Deterrence, incapacitation, and rehabilitation are prospective and societal – each looks forward and asks: What amount and kind of punishment will help make society safe? In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?

*United States v. Cole*, 622 F. Supp. 2d 632, 637 (N.D. Ohio 2008).[5] Retribution,

---

[4]   He was even recorded saying that part of what they do is support people if they are incarcerated or find jobs for those who are unemployed.

[5]   Federal sentencing law tracks these purposes. Section 3553 tells Courts to choose a sentence that reflects the seriousness of the offense (retribution), promotes respect for the law (retribution, general deterrence), provides just punishment for the offense (retribution), affords adequate deterrence to criminal conduct (general deterrence), protects the public from further crimes of the defendant (specific deterrence, incapacitation), and provides the defendant with needed training, care, and treatment (rehabilitation). 18 U.S.C. § 3553(a)(2).

incapacitation and deterrence, will inarguably be achieved by confinement, given Gonzalez-Martinez has never before been incarcerated. Given the collateral consequences to follow, more than the 36 months is not necessary.

Following his incarceration, Portillo will undoubtedly be taken into immigration custody while he awaits the deportation process. That will undoubtedly extend his time in custody. Moreover, if he has a deportation detainer, he will be ineligible for many, if not all, of the rehabilitative programs offered to other inmates. *See* Exhibit 3 (Federal Prisons Don't Even Try to Rehabilitate the Undocumented). Exclusion from these programs fails to help Portillo be productive while incarcerated and also eliminates his chances of earning good-time for participating in these programs. And then, unlike almost every other prisoner who is sent to a half-way house approximately six months prior to release, he will also be ineligible for this placement. *See* Exhibit 4, pg 30. (Bureau of Prison Report, 2012). Thus, he will serve all of his time in prison and will be unable to earn as much good-time as a citizen prisoner.

Portillo also has real medical issues on account of his unprovoked assault in jail. Because it is unlikely that he will receive the medical treatment he requires—and should have been provided prior—a shorter sentence would speed up the time it will take for him to receive this procedure when he returns to El Salvador.

Portillo is seeking a sentence of 27 months. It is the low end of the guideline the parties anticipated and the middle of the guideline as calculated by probation. It is more

than a fair sentence after taking into account Portillo's conduct in this case and the various issues that have arisen during his incarceration.

## *CONCLUSION*

Portillo thus asks this court to sentence him to 27 months incarceration.

Respectfully submitted,
Rutilio Portillo
By his attorney,

Dated: May 26, 2018

/s/ Eric Tennen
Eric Tennen, BBO # 650542
Swomley & Tennen, LLP
50 Congress Street, #600
Boston, MA  02109
Tel. 617-227-9443
etennen@swomleyandtennen.com

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including counsel for the Government.

/s/ Eric Tennen
Eric Tennen